IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| TERENCE LAVOUR SWIFT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No: 1:13-cv-01158-STA-egb |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER REVERSING THE DECISION OF THE COMMISSIONER AND
REMANDING PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(G)**

Plaintiff Terence Lavour Swift filed this action to obtain judicial review of Defendant Commissioner's final decision denying his application for disability insurance benefits under Title II of the Social Security Act ("the Act") and an application for supplemental security income ("SSI") benefits based on disability under Title XVI of the Act. Plaintiff's applications were denied initially and upon reconsideration by the Social Security Administration. Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which was held on September 8, 2011. On January 19, 2012, the ALJ issued a decision, finding that Plaintiff was not entitled to benefits. The Appeals Council denied Plaintiff's request for review, and, thus, the decision of the ALJ became the Commissioner's final decision. Plaintiff then filed for judicial review in this Court. For the reasons set forth below, the decision of the Commissioner is **REVERSED**, and the action is **REMANDED** for a reassessment of Plaintiff's credibility and the medical opinions in the record pursuant to sentence four of 42 U.S.C. § 405(g).

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he was a party. "The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."[1] The Court's review is limited to determining whether there is substantial evidence to support the Commissioner's decision,[2] and whether the correct legal standards were applied.[3]

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[4] It is "more than a mere scintilla of evidence, but less than a preponderance."[5] The Commissioner, not the Court, is charged with the duty to weigh the evidence, to make credibility determinations and resolve material conflicts in the testimony, and to decide the case accordingly.[6] When substantial evidence supports the Commissioner's determination, it is conclusive, even if substantial evidence also supports the opposite

---

[1] 42 U.S.C. § 405(g).

[2] *Id.*

[3] *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). *See also Landsaw v. Sec'y of Health & Human Servs*, 803 F.2d 211, 213 (6th Cir. 1986).

[4] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389 (1971)).

[5] *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

[6] *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

conclusion.[7] "[W]hen there is not substantial evidence to support one of the ALJ's factual findings and his decision therefore must be reversed, the appropriate remedy is not to award benefits. The case can be remanded under sentence four of 42 U.S.C. § 405(g) for further consideration."[8]

The Court may immediately award Plaintiff benefits "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits."[9] "A judicial award of benefits is proper only where the proof of disability is overwhelming or [when] the proof of disability is strong and evidence to the contrary is lacking."[10] These factors are not present in this case, and, therefore, an immediate award of benefits is not appropriate. However, a remand pursuant to sentence four of § 405(g) is appropriate because all essential issues have not been resolved.

Plaintiff was born on May 22, 1983, and has a ninth grade education. He previously worked as a door manufacturing assembler, a sheet metal manufacturing shearer, and a material handler. Plaintiff alleges disability beginning March 1, 2007, due to chronic asthma and back and shoulder problems.

The ALJ enumerated the following findings: (1) Plaintiff met the insured status requirements through March 1, 2007, the alleged onset date; (2) Plaintiff has not engaged in substantial gainful activity since the alleged onset date; (3) Plaintiff has the following severe impairment: asthma; but he does not have impairments, either alone or in combination, that meet

---

[7] *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

[8] *Faucher v. Secretary*, 17 F.3d 171, 175 (6th Cir. 1994).

[9] *Id.* at 176 (citations omitted).

[10] *Id.*

or equal the requirements of any listed impairment contained in 20 C.F.R. pt. 404, subpt. P, app. 1 of the listing of impairments; (4) Plaintiff retains the residual functional capacity to perform a full range of work at all exertional levels with no concentrated exposure to gases, fumes, dusts, and temperature extremes; he is limited to routine tasks with an articulated production schedule with minimum changes in the work setting so there is no need for independent goal-setting judgments; (5) Plaintiff is unable to perform his past relevant work; (6) Plaintiff was a younger individual with a limited education on the alleged onset date; (7) transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules ("the grids") as a framework supports a finding that Plaintiff is not disabled whether or not he has transferable job skills; (8) considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform; (9) Plaintiff was not under a disability as defined in the Act at any time through the date of this decision.[11]

The Social Security Act defines disability as the inability to engage in substantial gainful activity.[12] The claimant bears the ultimate burden of establishing an entitlement to benefits.[13] The initial burden of going forward is on the claimant to show that he is disabled from engaging in his former employment; the burden of going forward then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background.[14]

---

[11] R. 16 – 21.

[12] 42 U.S.C. § 423(d)(1).

[13] *Born v. Sec'y of Health & Human Servs*, 923 F.2d 1168, 1173 (6th Cir. 1990).

[14] *Id.*

The Commissioner conducts the following, five-step analysis to determine if an individual is disabled within the meaning of the Act:

1. An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

2. An individual who does not have a severe impairment will not be found to be disabled.

3. A finding of disability will be made without consideration of vocational factors, if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the regulations.

4. An individual who can perform work that he or she has done in the past will not be found to be disabled.

5. If an individual cannot perform his or her past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.[15]

Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis.[16] Here, the sequential analysis proceeded to the fifth step with a finding that, although Plaintiff cannot perform his past relevant work, there is a substantial number of jobs that exist in the national economy that he can perform.

Plaintiff argues that substantial evidence does not support the ALJ's findings and that the ALJ did not follow all the legal rules in making his decision. He specifically argues that the ALJ failed to properly evaluate the medical opinion evidence and, instead, substituted her own judgment as to Plaintiff's cognitive abilities; did not adequately consider the impact of Plaintiff's mental limitations on his ability to work when making the residual functional capacity finding; and failed to properly evaluate his credibility. The Court agrees that substantial evidence does

---

[15] *Willbanks v. Sec'y of Health & Human Servs*, 847 F.2d 301 (6th Cir. 1988).

[16] 20 C.F.R. § 404.1520(a).

not support the decision denying Plaintiff's applications for benefits and finds that a remand is in order because the ALJ failed to correctly assess both the medical evidence in the record and Plaintiff's credibility.

Looking at the ALJ's credibility assessment first, the Court finds several errors. Although it is well-settled that the Commissioner is not required to fully credit subjective complaints,[17] substantial evidence cannot support a finding that is based on an inaccurate reading of the record. In the present case, the ALJ relied greatly on what she perceived as evidence of Plaintiff's smoking and his denial thereof when assessing Plaintiff's credibility. The totality of this evidence consists of a generic smoking cessation pamphlet that was given to Plaintiff when he was discharged from the hospital.[18] According to the ALJ, a hospital would not have provided Plaintiff with a smoking cessation pamphlet unless Plaintiff smoked, and, thus, she concluded that "the record clearly shows he is a smoker."[19] The ALJ reached this conclusion despite the fact that both Plaintiff and his mother testified that he no longer smoked and there was no evidence from any medical provider that Plaintiff smoked at any relevant time. The presence of an unexplained generic smoking pamphlet in the record cannot, without more, support a finding that both Plaintiff and his mother gave untruthful testimony when they denied that Plaintiff smoked. Thus, substantial evidence does not support this credibility finding.

Additionally, the ALJ found Plaintiff to have diminished credibility as to his cognitive limitations because the vocational expert classified several of his past jobs as semi-skilled. According to the ALJ, William Selby, the vocational expert, testified that a "person who is

---

[17] *Wooten v. Apfel*, 108 F. Supp.2d, 921, 928 (E.D. Tenn. 2000) (citing *Fraley v. Secretary of Health & Human Servs.*, 773 F.2d 437, 440 (6th Cir. 1984)).

[18] R. 610.

[19] R. 18 – 19.

limited as reported by the claimant would not be capable of performing the jobs that the claimant held for long enough to attain his insured status. In fact, the individual would not be able to hold those jobs at all."[20] The ALJ misstated the vocational expert's testimony. The ALJ asked the vocational expert whether "someone who is mentally deficient would be capable of performing semi-skilled jobs?"[21] The vocational expert answered, "**Usually** a person who's mentally deficient would have trouble with semi-skilled jobs."[22] That is, the vocational expert merely opined that someone who is mentally impaired to the degree claimed by Plaintiff might have trouble performing a semi-skilled job – not that semi-skilled work was necessarily inconsistent with mentally deficient intellectual functioning.[23]

The ALJ rejected Plaintiff's claims of mental impairments based on her misreading of the vocational expert's testimony. "In light of the fact that the claimant previously performed semi-skilled work, the assertions [of being "mentally challenged and unable to perform even unskilled work"] are deemed **wholly** incredible.[24] Additionally, "[T]he claimant is not deemed to have provided any credible testimony as his presentation was wholly inconsistent with the record of work and activities."[25]

---

[20] R. 16-17 (stating that the vocational expert testified that a person as mentally challenged as Plaintiff claimed to be would not be able to hold and perform semi-skilled work).

[21] R. 40.

[22] *Id.* (emphasis added).

[23] Furthermore, how a claimant performed a job is not necessarily how that job is generally performed in the national economy according to the DOT. *See* SSR 82-61. Just because a job is generally performed as semi-skilled does not mean that a claimant actually performed that job as semi-skilled work.

[24] R. 16 (emphasis added).

[25] R. 19.

The ALJ's misreading of the vocational expert's testimony is particularly important in light of the evidence in the record that Plaintiff does, in fact, suffer from mental limitations. For example, examining psychologist Paul Brown, Ph.D., administered the Wechsler Adult Intelligence Scale-IV (WAIS-IV) and obtained "moderately valid" and "moderately reliable" data. Plaintiff had a Verbal Comprehension Index (VCI) of 74; a Working Memory (WMI) of 60; a Processing Speed (PSI) of 74; and a Full Scale IQ (FSIQ) of 64. The VCI and PSI were in the borderline range, while the WMI and FSIQ were in the extremely low range.[26] The Wide Range Achievement Test-4 showed that Plaintiff had first-percentile Word Reading and Math Computation.[27] Dr. Brown observed abnormalities of mood, affect, memory, and computation and diagnosed a depressive disorder not otherwise specified and mentally deficient range of intellectual functioning.[28]

Dr. Brown opined that Plaintiff had a [m]oderate limitation with respect to understanding and remembering simple or detailed instructions and mild to moderate limitations of his abilities to maintain schedules and attendance; sustain concentration for at least a two-hour period; persist during a workday or workweek without interruption from psychological symptoms; and work in coordination with and/or proximity to others without being distracted by them.[29] The ALJ's residual functional capacity assessment does not reflect any such limitations. Dr. Brown also reported that Plaintiff had mild to moderate limitations of his abilities to maintain socially appropriate behavior, interact appropriately with coworkers, accept instructions, and respond

---

[26] R. 464.

[27] *Id.*

[28] R. 461 - 66.

[29] R. 465-66.

appropriately to criticism from supervisors.[30] The ALJ's residual functional capacity assessment does not include any social limitations.[31] Dr. Brown's opinions were based not only on Plaintiff's limited intellect but also on Plaintiff's depressive disorder, which was not addressed by the ALJ.[32] Although the ALJ did not have to accept the mental limitations found by Dr. Brown, she could not rely on a misreading of the record and an improper weighing of Plaintiff's credibility to reject the opinion of Dr. Brown or any other expert.

Moreover, the ALJ failed to address whether Plaintiff performed his purportedly semi-skilled jobs long enough to learn how to do them at the semi-skilled level. For example, the vocational expert stated that one of Plaintiff's past jobs was classified as a "shearer in sheet metal manufacturing" with the SVP of 4.[33] The only job Plaintiff described as involving shearing was for Manpower Staffing for less than two months.[34] This type of job requires over three months and up to six months to learn.[35] Substantial evidence does not support the ALJ's rejection of Dr. Brown's opinion based on Plaintiff's purported past work when the ALJ did not consider evidence that Plaintiff did not perform that work long enough to learn how to do it at the semi-skilled level.

---

[30] R. 466.

[31] The only mental limitation in the residual functional capacity finding is that Plaintiff is limited to routine tasks with an articulated production schedule with minimum changes in the work setting so there is no need for independent goal-setting judgments. R. 18.

[32] Dr. Brown's opinion was bolstered by the opinion of Norma J. Calway-Fagen, Ph.D. who determined that Plaintiff had borderline intellectual functioning, as well as a depressive disorder not otherwise specified. R. 541 - 56.

[33] R. 39.

[34] R. 190 - 194 ("4/29/07" - "6/20/07"; "2/14/08" - "2/15/08").

[35] DOT, App. C ("Over 3 months up to and including 6 months").

A remand is necessary in light of the ALJ's reliance on Plaintiff's work history to reject Dr. Brown's opinion given that the ALJ (1) misstated the vocational expert's testimony; (2) did not consider the DOT's classification of work as generally performed with work as actually performed; and (3) failed to evaluate how long Plaintiff worked at his jobs.[36] Moreover, a remand is necessitated by the ALJ's credibility assessment of Plaintiff based on an inaccurate interpretation of the evidence; this inaccuracy cannot constitute substantial evidence to support a denial of benefits. While any one of these errors, in and of itself, might not warrant a remand, combined they lead to the conclusion that the decision denying Plaintiff's applications for benefits must be reversed. On remand, Plaintiff's credibility and the medical opinion evidence must be reevaluated with a correct reading of the record.

Having determined that the decision must be reversed, the Court must decide whether it is appropriate to remand this case or to direct the payment of benefits. Because the record does not establish that Plaintiff is entitled to benefits or that all essential facts have been resolved, it is appropriate to remand this case for further proceedings. The decision of the Commissioner is **REVERSED**, and the action is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date:   June 6, 2017.

---

[36] *See Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 527 (6th Cir. 2014) ("Although the record contains some evidence supporting the ALJ's decision to accord Papadakis' opinion little weight, it is not clear that the ALJ would have come to the same conclusion had she not mischaracterized the record….")